CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 1 2 2014

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **BANS PASTA, LLC,** | ) | Case No.: 7:13-cv-00360-JCT |
| | ) | |
| **Plaintiff,** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | **By: James C. Turk** |
| **MIRKO FRANCHISING, LLC,** | ) | **Senior United States District Judge** |
| **MIRKO DI GIACOMANTONIO, and** | ) | |
| **ARCHIE B. CRENSHAW,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

Pending before the Court is Defendants' Motion to Dismiss the Amended Complaint, ECF No. 13, which seeks dismissal of Plaintiff's Complaint in its entirety. Plaintiff has filed a response in opposition, ECF No. 22, and Defendants have filed a reply, ECF No. 23. On January 31, 2014, the Court heard oral argument on the motion and it is now ripe for disposition. For the reasons set forth below, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

### A. Factual Background

Accepting the well-pled facts in the Amended Complaint as true, as this Court must when ruling on a motion to dismiss, see Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008), the facts of the case are as follows:

Defendant Mirko Franchising, LLC, ("Mirko") is a Georgia limited liability corporation that sells Italian restaurant franchises. Defendant Mirko Di Giacomantonio ("Giacomantonio") is a manager and the Chief Executive Officer of Mirko, and Defendant Archie B. Crenshaw ("Crenshaw") is a manager of Mirko. Plaintiff Bans Pasta, LLC, ("Bans Pasta") is a Virginia limited liability company formed for the purpose of purchasing and operating a Mirko franchise

in Roanoke, Virginia. Randy Sowden ("Sowden") and Michael Boggins ("Boggins") are principals of Bans Pasta. This action involves a franchisor/franchisee dispute between the Defendants and Bans Pasta. ECF No. 11, Amended Compl., ¶¶ 1–7.

Between December 2009 and September 2011, Sowden and Boggins discussed with Giacomantonio and Crenshaw the possibility of purchasing a Mirko restaurant franchise. Sowden and Boggins, not having any previous experience in the restaurant industry, relied heavily on the representations made by Giacomantonio and Crenshaw regarding the financial viability of the Mirko franchises. During these discussions, Giacomantonio and Crenshaw made several material misrepresentations to Sowden and Boggins that were designed to induce Sowden and Boggins to purchase a Mirko franchise, both oral and written. ECF No. 11, ¶ 19.

The written misrepresentations were made in three specific documents, all of which contained information about the financial viability of Mirko franchises. First, on December 5, 2010, Giacomantonio sent Sowden an Excel spreadsheet containing a pro forma which consisted of financial assumptions for Sowden and Boggins to use as a basis for making financial projections regarding the viability of a Mirko franchise. Giacomantonio represented that the pro forma accurately reflected the average performance of a franchise. This and various oral misrepresentations were made during a December 2010 meeting in Atlanta, when Giacomantonio and Crenshaw inaccurately conveyed the strength of existing Mirko franchises to Sowden and Boggins in an attempt to persuade the two to purchase a franchise. ECF No. 11, ¶¶ 21–22.

Second, on February 21, 2011, Crenshaw provided Boggins a copy of the 2010 year-end financial statements from a Mirko franchise located in Athens, Georgia operated by franchisee David Weeks ("Weeks"). Sowden and Boggins expressed concern to Crenshaw about the veracity of the Weeks financial statements based upon certain unusual line items and accounting

practices included in them. In response, Crenshaw reported that Weeks had included expenses in the statements designed to reduce the franchise's income tax obligations. Crenshaw assured Sowden and Boggins that the true value of the franchise was higher than depicted in Weeks' calculations. Crenshaw also provided Sowden and Boggins with the third document referenced in the Amended Complaint—Crenshaw's own written summary of Weeks' financial information. According to Plaintiff, this document inflated the franchise's net profit and misrepresented figures related to the franchise's gross revenue, food costs, and labor costs. Although Sowden and Boggins initially remained skeptical about the reliability of Crenshaw's financial statements, Crenshaw eventually convinced them that his figures were a true and accurate representation of the financial viability of a Mirko franchise. ECF No. 11, ¶¶ 24–27.

In April 2011, Sowden and Boggins met with Giacomantonio in one of his Buckhead, Georgia restaurants to discuss some concerns Sowden and Boggins still had about opening a franchise. During this meeting, Giacomantonio reviewed the pro forma spreadsheet in detail with Sowden and Boggins, and Sowden and Boggins explained to Giacomantonio that, in order for the Mirko franchise to be financially beneficial to them, it would need to generate a net annual profit of $100,000.[1] Giacomantonio then assured Sowden and Boggins that their franchise would net a profit of $100,000 and likely exceed their financial expectations due to the size of Bans Pasta's identified restaurant location. ECF No. 11, ¶¶ 28–29.

In reliance on Giacomantonio and Crenshaw's representations about the financial strength of Mirko franchises, Bans Pasta executed a Franchise Agreement on September 10, 2011, for the operation of a Mirko franchise in Roanoke. ECF No. 11, ¶ 31. The restaurant

---

[1] At this time Sowden and Boggins also told Giacomantonio that, if they purchased the Mirko franchise, Boggins would have to resign from his current employment and forego an annual salary in excess of $100,000 in order to manage the restaurant full-time.

opened in its location at the Towers Shopping Center on or about October 8, 2012. ECF No. 11, ¶ 33.

At some point after the restaurant opened, Sowden received the sales figures of additional Mirko restaurant locations from Mirko's controller, Patricia Young ("Young"). As they reviewed these figures, Sowden and Boggins "started to question" whether the representations made by Giacomantonio and Crenshaw regarding the financial viability of Mirko franchises were accurate since "the other stores did not appear to perform near the levels that had been represented to them." ECF No. 11, ¶ 33. Sowden and Boggins continued to receive weekly sales figures from Young through April 2013, which "served to further confirm" that the other restaurants were not performing as Defendants had represented.

On March 14, 2013, Jeff Davis ("Davis"), Mirko's head Executive Chef, visited Bans Pasta's restaurant to deliver a new menu and a spreadsheet outlining changes to the pricing and cost schedule. Davis told Sowden and Boggins at that time that Mirko's original pricing, as reflected in the pro formas that were previously provided to them, "did not take into account the level and existence of several essential operating costs." He also admitted that Giacomantonio and Crenshaw knew that the representations they had made to Sowden and Boggins regarding the financial strength of Mirko franchises were false. Davis concluded the meeting by stating that "the current Mirko model is broken—we know it is broken." ECF No. 11, ¶ 35. As a result of this meeting, Bans' principals "obtained confirmation for the very first time that Giacomantonio and Crenshaw had provided false and misleading representations" to induce them to purchase a franchise. Id.

According to the Amended Complaint, after the meeting with Davis, Bans Pasta "promptly notified Defendants of their unlawful conduct in an attempt to void and/or rescind the franchise relationship." ECF No. 11, ¶ 36. "Instead of agreeing that the Franchise Agreement

4

should be deemed void and the parties restored to their pre-contractual position," Defendants demanded strict compliance with the Franchise Agreement and threatened litigation against Bans Pasta and its principals. Bans Pasta claims that it "did not receive any benefits by virtue of its execution of the Franchise Agreement with Mirko and, instead, lost hundreds of thousands of dollars as a result of such franchise relationship." ECF No. 11, ¶ 36 n.8.

The Amended Complaint further alleges that:

> On August 2, 2013, and in light of Mirko's prior refusal to agree to void and/or rescind the Franchise Agreement, Bans had no choice but to initiate this litigation to seek formal relief from this Court. Bans notified Defendants that it had no choice but to cease all operations as a Mirko Pasta franchisee in order to mitigate its damages as a result of Defendants' wrongful conduct. Defendants subsequently retaliated against Bans and advised Bans that Mirko was cancelling and/or terminating the Franchise Agreement in light of Bans' closure of its Mirko Pasta restaurant and demanded that Bans promptly pay to it hundreds of thousands of dollars.

ECF No. 11, ¶ 37.

Bans filed suit on August 2, 2013. See ECF No. 1. Its Amended Complaint includes a claim under the Virginia Retail Franchising Act, Va. Code Ann. 13.1-557 et seq., common law tort claims, and a negligence per se claim, and also seeks rescission of the contract as a remedy. It does not seek relief for any breach of the contract. Rather, all of Plaintiff's claims derive from its allegations that Defendants' misrepresentations violated state and federal laws and/or induced Plaintiff to enter into the Franchise Agreement.

## B.    Pertinent Documents

### 1.    Provisions of the Franchise Agreement

The only documents attached to the Amended Complaint were the three documents containing the alleged written misrepresentations. Nonetheless, the Franchise Agreement itself is attached to Defendants' Motion to Dismiss and Plaintiff's counsel stated at the hearing that

Plaintiff agreed the Court could consider the Franchise Agreement without converting the motion to dismiss into a summary judgment motion. Moreover, the Amended Complaint refers repeatedly to the Franchise Agreement and the Court concludes it may consider it because it is central to Plaintiff's claim. See Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 661 (7th Cir. 2002) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim"); Davis v. George Mason Univ., 395 F. Supp. 2d 331, 335 (E.D. Va. 2005), aff'd, 193 F. App'x 248 (4th Cir. 2006) (a court's consideration of materials referenced in the complaint and attached only to a motion to dismiss does not require converting that motion to one for summary judgment). Accordingly, the Court will consider the Franchise Agreement in ruling on the motion.

The Agreement contains a number of provisions relevant to the parties' arguments or the Court's rulings herein, including a choice of law provision, a merger clause, and a general clause in which Plaintiff disclaims reliance on information outside the agreement. The Court sets forth the text of each below.

The choice of law provision states, "Except to the extent governed by the U.S. Trademark Act of 1946 . . . this Agreement shall be governed by the laws of the State of Georgia, without giving effect to that state's conflict of law principles." Franchise Agreement, ECF No. 14, Exh. A, § XXIII(E).

The merger clause, titled "Modification," provides:

> This instrument contains the entire agreement between the parties relating to the rights herein granted and the obligations herein assumed and supersedes all prior oral and written understandings and agreements between the parties. Any oral representations or modifications concerning this Agreement shall be of no force or effect unless a subsequent modification in writing is assigned by the parties hereto.

Id. § XXIII(I).

The disclaimer clause includes certain representations made by Bans Pasta as the Franchise Owner,[2] to wit:

> That he or she has conducted an independent investigation of the Franchisor's business and System and recognizes that the business venture contemplated by this agreement involves business risks and that its success will be largely dependent upon the ability of Franchise Owner as an independent business person. The Franchisor expressly disclaims the making of, and Franchise Owner acknowledges that it has not received any warranty or guarantee, express or implied, as to the potential volume, profits or success of the business contemplated by this Agreement.

Id. § XXX(A).

## 2.    Other Documents Attached to the Motion to Dismiss

In addition to the Franchise Agreement, Defendants have also attached as exhibits to their motion to dismiss two letters from Plaintiff's counsel (dated March 20, 2013 and August 5, 2013) in which Bans Pasta's counsel discusses the status of its claims and its remedies against Defendants. See ECF Nos. 14-3 and 14-4. Defendants also attach a document titled, "Summary of Acknowledgments," which was executed by Bans Pasta and its equity owners on September 10, 2011, the same date that Bans Pasta entered into the Franchise Agreement. That document includes statements that Mirko has not made any "representation, warranty or guaranty . . . as to the potential revenues, profits or services of the business venture to Franchisee." Summary of Acknowledgments, ECF No. 14-2, at 1. It also states that "Franchisee has not relied on any warranty or representation, expressed or implied, as to the potential success or projected income of the business" and that "Franchisee acknowledges and agrees that it has no knowledge of any representation

---

[2] The Franchise Agreement incorporates into the definition of Franchise Owner "each owner of an Equity Interest in Franchise Owner if Franchise Owner is a legal entity." Id. § XXX.

made by Mirko Franchising, LLC or its representatives of any information that is contrary to the terms contained in the Franchise Agreement." Id. at 1–2.

Bans Pasta argues that this Court may not consider either the letters or the Summary of Acknowledgements when ruling on the pending motion to dismiss. In its Reply, Defendants dispute this, arguing that the Amended Complaint "indirectly refers" to the March 20, 2013 letter and also raises other grounds for why the letters should be considered. ECF No. 23 at 10 n.21. It is not clear to the Court whether the March 20, 2013 is, in fact, the "notice" to which Plaintiff is referring in the Amended Complaint. Moreover, Plaintiff emphasizes that the two attached letters were only two of a larger number of letters constituting a dialogue between the parties during that time-frame and points out that Defendants' responses to the two letters likewise "have a bearing on the rescission issue." ECF No. 22 at 15 n.7. In light of this background, and at this preliminary stage of the case, the Court concludes it would be improper to consider these additional materials.

As to the "Summary of Acknowledgements," Bans Pasta correctly points out that the document is nowhere referenced in the Amended Complaint. Furthermore, although the document appears to have been signed and entered into by the parties on the same day as the Franchise Agreement and appears related to the Franchise Agreement, Defendants have not alleged that the Franchise Agreement incorporates it by reference nor shown that the document is otherwise "central to [Plaintiff's] claim." Cf. Rosenblum, 299 F.3d at 661. Thus, the Court does not consider the "Summary of Acknowledgements" in ruling on Defendants' 12(b)(6) motion.

## II.    ANALYSIS

### A.    Legal Standards Governing Rule 12(b)(6) Motions to Dismiss

To survive a motion to dismiss, Plaintiff's allegations must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). Additionally, Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud . . ." Fed. R. Civ. P. 9(b).

### B.    Specific Claims

Plaintiff's Amended Complaint contains seven different counts:

> Count I – Violation of Virginia Retail Franchising Act;
> Count II – Fraud in the Inducement;
> Count III – Constructive Fraud;
> Count IV – Negligent Misrepresentation;
> Count V – Rescission;
> Count VI – Negligence Per Se; and
> Count VII – Claim for Attorneys' Fees and Expenses of Litigation.

All of the counts are asserted against all three Defendants, except for Count V, which names only Mirko Franchising, LLC. Additionally, Counts III and IV state that each is being "asserted in the alternative to Count II." ECF No. 11, ¶¶ 60, 67. Defendants seek dismissal of all of the counts, on various legal grounds, each of which is discussed in turn below.

### 1.    Count I - Claim for Violation of the Virginia Retail Franchising Act

In Count I, Plaintiff seeks damages under the Virginia Retail Franchising Act, Va. Code Ann. 13.1-557 et seq. ("VRFA"). In their motion, Defendants claim that Plaintiff is alleging violations of two different provisions of the VRFA—Va. Code §§ 13.1-563 and 13.1-564 (hereinafter "Section 563" and "Section 564," respectively). Section 563 states:

It shall be unlawful for any person, in connection with the sale or offer to sell a franchise in this Commonwealth, directly or indirectly:

1. To employ any device, scheme, or artifice to defraud;

2. To make any untrue statement of a material fact or to omit to state a material fact necessary in order to avoid misleading the offeree;

3. To engage in any transaction, practice, or course of business that operates or would operate as a fraud or deceit upon the franchisee; or

4. To fail to provide the franchisee a copy of (i) the franchise agreement and (ii) such disclosure document as may be required by rule or order of the Commission.

Va. Code Ann. § 13.1-563.

Section 564 provides:

It shall be unlawful for a franchisor to cancel a franchise without reasonable cause or to use undue influence to induce a franchisee to surrender any right given to him by any provision contained in the franchise.

Va. Code Ann. § 13.1-564.

Also at issue is Section 13.1-571(a) ("Section 571"), which is the provision allowing suit:

[A]ny franchisee who has declared the franchise void under § 13.1-565 ["Section 565"] or who has suffered damages by reason of any violation of § 13.1-564 may bring an action against its franchisor to recover the damages sustained by reason thereof. Such franchisee, if successful, shall also be entitled to the costs of the action, including reasonable attorney's fees.

Va. Code Ann. § 13.1-571(a).

Defendants contend that Count I does not state a claim for relief for several, inter-related reasons. First, they assert that the VRFA does not grant a cause of action for any violation of Section 563, but only—via Section 571—for violations of Section 565 and Section 564. Bans Pasta agrees that no direct claim under Section 563 can be asserted, but explains that it is

advancing instead a claim under Section 565, which incorporates violations of Section 563. ECF No. 22 at 2. Second, Defendants posit that the Amended Complaint does not allege a plausible claim of a violation of either Section 564 of 565.[3] As discussed below, the Court agrees with Defendants and concludes that Plaintiff has not asserted a valid claim under either Section 565 or Section 564 and thus its VRFA claim must be dismissed.

### a. Plaintiff's Section 565 Claim (Incorporating Section 563)

The Court addresses first whether Plaintiff has properly plead a claim under Section 565. As an initial matter, the Amended Complaint does not reference Section 565 at all, so the Court finds it doubtful that Plaintiff intended to assert a claim under that provision. But even if the Court were to allow amendment to assert a claim under Section 565 (and incorporating the alleged Section 563 violations by reference), any such amendment would be futile, because the factual allegations in the Amended Complaint make clear that Plaintiff did not comply with the time requirements set forth in Section 565.

Specifically, Section 565 allows a franchise to be "declared void by the franchisee at his option by sending a written declaration of that fact and the reasons therefor to the franchisor by registered or certified mail if . . . [t]he franchisor's offer to sell a franchise was unlawful, as provided in § 13.1-560 or § 13.1-563, provided that the franchisee send such written declaration within 72 hours after discovery thereof but not more than 90 days after execution of the franchise." Va. Code Ann. § 13.1-565.

The Franchise Agreement here was signed in September 2011 and Bans Pasta did not open its restaurant until October 2012. Regardless of which of those dates is considered the "execution of the franchise," the earliest that Plaintiff alleges it attempted to void or rescind the

---

[3] Defendants also contend that neither of the individual defendants are "franchisors" as defined in the VRFA and thus no claim can be asserted against them under it. ECF No. 14 at 8-12. In light of its ruling, the Court does not reach this argument.

contract was in March 2013, far outside the 90-day period. Accordingly, Section 565 is unavailable to Plaintiff and does not permit it to bring a cause of action under Section 571.

### b.    Plaintiff's Section 564 Claim

Likewise, the Court agrees with Defendants that Plaintiff has not stated a plausible claim for relief under Section 564. That provision renders it unlawful for "a franchisor to cancel a franchise without reasonable cause . . . ."[4] The Amended Complaint in this case alleges that Plaintiff was attempting to cancel the franchise and that it was Defendants who insisted on the performance of the contract. See ECF No. 11, ¶ 53. Although a portion of Paragraph 53 alleges that Defendants "retaliated against Bans and advised Bans that Mirko was cancelling and/or terminating the Franchise Agreement," that allegedly took place after Bans Pasta notified that it was ceasing all operations as a Mirko Pasta franchisee. Based on these allegations, it simply does not satisfy the Iqbal plausibility standard for Plaintiff to claim that it was Defendants who "cancel[led] the franchise without reasonable cause." Indeed, Plaintiff's other claims are all premised on its mutually exclusive contention that it rescinded (or attempted to rescind) the contract on the grounds of fraud, not that Defendants attempted to cancel the franchise.

For the foregoing reasons, Count I of the Amended Complaint is **DISMISSED**.

### 2.    Counts II, III, and IV – the Misrepresentation Claims

Defendants refer collectively to Counts II, III, and IV of the Amended Complaint as the "Misrepresentation Claims," see ECF No. 14 at 15, and the Court will also. With regard to all of these claims, Defendants first argue that Georgia law governs the claims, because there is a choice of law provision in the contract that states it "shall be governed by the laws of the State of

---

[4] As noted, the provision also makes it unlawful for a franchisor to "use undue influence to induce a franchisee to surrender any right given to him by any provision contained in the franchise." Plaintiff admits its Section 564 claim is not based on any allegation that Defendants used undue influence. ECF No. 22 at 8 n.3.

Georgia without giving effect to that's state's conflicts of laws principles." Franchise Agreement, ECF No. 14, Exh. A § XXIII(E). They next contend that, under Georgia law, Bans Pasta did not timely or properly rescind the contract. According to Defendants, Plaintiff failed to rescind, both because any attempted rescission was not timely and because Plaintiff failed to return the benefits it earned under the agreement, as required to rescind an agreement under Georgia law. Absent a proper rescission, they argue that the merger clause contained in the Franchise Agreement bars Plaintiff's misrepresentation claims.

Unsurprisingly, Plaintiff disagrees with each of Defendants' contentions. Plaintiff argues first that the choice-of-law provision is a narrowly-drawn provision that does not encompass the entirety of the parties' relationship and certainly does not apply to its claims that there was fraud or misrepresentation in the inducement of the contract, claims which were based on conduct prior to the contract even being executed. Thus, Plaintiff posits that Virginia law should apply to the tort claims. Regardless of which law applies, moreover, Plaintiff argues that it rescinded the Franchise Agreement properly and that, at worst, the issue of whether it properly rescinded under Georgia law is a question of fact and cannot be determined on a 12(b)(6) motion.

Finally, Plaintiff argues that the merger clause does not bar its claims because of its rescission. It points to both Georgia and Virginia authority for the proposition that "where a plaintiff elects to rescind a contract and sue in tort for fraud, a merger clause does not preclude, as a matter of law, a plaintiff's reliance on prior oral and/or verbal representations that induced [it] to enter into an agreement." ECF No. 22 at 3; id. at 19-20.

### a. Applicable Law

Judge Jones of this Court recently concluded that a similar choice-of-law provision in a stock purchase agreement extended to the plaintiff's claims under a state statute, and also applied to the plaintiff's claims for both actual and constructive fraud premised on written statements

13

made before the time of contracting. <u>Pyott-Boone Electronics Inc. v. IRR Trust for Donald L. Fetterolf Dated Dec. 8, 1997</u>, 918 F. Supp. 2d 532, 542, 548 (W.D. Va. 2013). The parties devote considerable ink to discussing the decision and whether it governs the instant case. The Court will devote less, primarily because it has considered and relies on the reasoning of Judge Jones in <u>Pyott-Boone</u> as to this issue.

At the outset, the Court agrees with Judge Jones's reasoning and conclusion that forum law—here, Virginia law—should be applied to determine the <u>scope</u> of a choice-of-law provision. <u>See</u> <u>Pyott-Boone</u>, 918 F. Supp. 2d at 542-43. Thus, the Court must determine, under Virginia law, the scope of the choice-of-law provision and whether it should also be applied to Plaintiff's tort claims in this suit.

Judge Jones's opinion in <u>Pyott-Boone</u> contains a thorough discussion of the issue of whether choice-of-law provisions should be deemed to encompass torts and other non-contract claims, including fraudulent inducement claims, noting that one writer on the subject has deemed the issue "unsettled." <u>Id.</u> at 544 (citing Peter Hay, et al., <u>Conflict of Laws</u>, § 18.10 (5th ed. 2010)). In attempting to determine how the Virginia Supreme Court would rule on the issue, Judge Jones considered both the cited treatise's recommendations and surveyed a number of decisions with differing outcomes. <u>Id.</u> at 544-546. He concluded that the better approach was to hold that the plaintiff's non-contract claims are governed by the law set forth in the choice-of-law provision, Delaware law. <u>Id.</u> at 546. He offered a number of sound policy reasons for that conclusion, and they are ones that this Court agrees with. <u>See</u> <u>id.</u> at 544-46.

Plaintiff points to other decisions, and in particular two decisions from the Eastern District of Virginia, that reached the opposite conclusion. In <u>LTD Mgmt. Co., LLC v. Holiday Hospitality Franchising, Inc.</u>, the court concluded that a contract that stated it "shall be governed and construed under, and in accordance with the laws" of Georgia was not broad enough to

14

encompass contract-related torts, including fraud. 2008 WL 7281926, at *10 (E.D. Va. 2008).

Accord Freedom v. Am. Online, Inc., 325 F. Supp. 2d 638, 653 (E.D. Va. 2004) ("a choice-of-law provision that, by its terms, applies only to the parties' contract or agreement must not be construed to govern the entirety of the parties' relationship and any claim that may arise from that relationship"). Judge Jones recognized and discussed both of these cases, but found them unpersuasive. See 918 F. Supp. 2d at 546 n.12. Again, the Court agrees that Judge Jones's approach in Pyott-Boone is a sound one for the reasons he set forth and thus will evaluate Plaintiff's claims under Georgia law.[5]

### b.     Elements of Claims and Georgia Law Governing Rescission

To succeed on his fraud claim under Georgia law, Plaintiff must establish "five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." Fuller v. Perry, 476 S.E.2d 793, 795 (Ga. Ct. App. 1996) (citations omitted); see Prince Heaton Enters., Inc. v. Buffalo's Franchise Concepts, Inc., 117 F. Supp. 2d 1357, 1360 (N.D. Ga. 2000) (setting forth slightly different formulation of same basic elements). Similarly, Plaintiff's negligent misrepresentation claim requires proof of : "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc., 479 S.E.2d 727, 729 (Ga. 1997). "[T]he same principles apply to both fraud and negligent misrepresentation cases" since "the only real distinction"

---

[5] In its response to the motion to dismiss, Plaintiff focuses on supposed factual distinctions between this case and Pyott-Boone in support of its argument that the reasoning of Pyott-Boone should not apply here. See ECF No. 22 at 10-14. The Court has considered these arguments, as well as the Defendants' response thereto, and is unpersuaded that any of these perceived factual differences should result in a different outcome.

between the two "is the absence of the element of knowledge of the falsity of the information disclosed." Holmes v. Grubman, 691 S.E.2d 196, 200 (Ga. 2010) (citations omitted); Prince Heaton Enters., Inc., 117 F. Supp. 2d at 1360 ("Negligent misrepresentation is a similar cause of action [to fraud] substituting negligence for the intent to deceive element.")

Constructive fraud, as alleged in Count IV, is an "equitable doctrine which will not support a claim for damages." Blakey v. Victory Equip. Sales, 576 S.E.2d 288, 293 (Ga. Ct. App. 2002). It "consists of any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another." Id. (quoting Ga. Code Ann. § 23-2-51(b)).

Notably, Defendants do not allege in their motion to dismiss that Plaintiff has failed to plead any of the specific elements of any of the Misrepresentation Claims. Instead, they argue that these claims are barred because Plaintiff never rescinded the contract and is thus deemed to have affirmed it. Because of this, the argument continues, Plaintiff is bound by the merger clause in the agreement and this clause bars Plaintiff's tort claims.

There is ample authority from Georgia courts addressing the related issues of rescission and whether, in the absence of a rescission, a merger clause bars fraud and misrepresentation claims. As explained by the Court of Appeals of Georgia,

> A purchaser claiming he was fraudulently induced to enter a sales contract has an election of remedies: (1) promptly after discovering the fraud he may rescind the contract and sue in tort for recovery of the purchase price and for any additional damages resulting from the alleged fraud; or (2) he may affirm the contract and sue for damages resulting from the fraud. This second suit, however, is not one for breach of contract, but one in tort. As these suits involve affirmance of the contract, the defrauded party may keep the benefits of the contract and still maintain an action for damages suffered because of the fraud. Although the action is in tort, it is based on the affirmance of the contract and seeks damages resulting from fraud arising from the contract. Because the allegedly defrauded party elected to affirm the contract, that party

16

> is bound by the contract's terms and is subject to any defenses
> which may be based on the contract. Ben Farmer Realty Co. v.
> Woodard, 212 Ga. App. 74, 75 (441 S.E.2d 421) [(1994)]."

Authentic Architectural Millworks, Inc. v. SCM Group USA, Inc., 586 S.E.2d 726, 729 (Ga. Ct.

App. 2003) (quoting Hightower v. Century 21 Farish Realty, 448 S.E.2d 271, 273 (Ga. Ct. App.

1994)). Thus, where a party affirms instead of rescinding the contract and a merger clause exists,

"he is relegated to a recovery in contract" and is bound by that contract and by any merger

clause. Authentic Architectural Millworks, 586 S.E.2d at 729 (citation omitted); id. (where a

party does not rescind and "the contract contains a merger clause, a party cannot argue [it] relied

[upon] representations other than those contained in the contract." (citation omitted).

By contrast, where a party rescinds the contract, the merger clause is inapplicable and

would not bar fraudulent inducement claims. See del Mazo v. Sanchez, 366 S.E.2d 333, 336-37

(Ga. Ct. App. 1988) ("If the party elects to rescind the contract as voidable, he is not bound by

the provisions of the rescinded contract.") (emphasis in original); see also ECF No. 22 at 19

(collecting Georgia authority to this effect).. Defendants do not argue to the contrary. See

generally ECF No. 21, 23. Thus, the issue of whether or not Plaintiff has rescinded the contract,

while not an element of Plaintiff's claims, may well determine whether or not it may proceed on

its Misrepresentation Claims. The Court turns to this issue next.

### c. Whether Plaintiff Has Properly Pled That It Rescinded the Contract

Plaintiff argues that the Court need not reach the issue at this time of whether the merger

clause bars the Misrepresentation Claims because it has at least pled that it rescinded the

contract. As noted, Defendants argue that Plaintiff has failed to effect a true rescission and that it

is too late to seek rescission through the filing of this lawsuit.

17

Georgia's statute governing rescission for fraud provides:

> A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value.

Ga. Code Ann. § 13-4-60.

Thus,

> [a] party seeking to rescind a contract for fraud must restore or tender back the benefits received under the contract, or show a sufficient reason for not doing so. A party rescinding a contract is not required to return consideration when to do so would be unreasonable or impossible. Restoration does not require that the other party be placed in the exact situation it was in before the contract, but only that it be placed substantially in its original position. The rescinding party must derive no unconscionable advantage from the rescission. Meadow River Lumber Co. v. Univ. of Ga. &c [sic]., 233 Ga.App. 169, 174-175(2), 503 S.E.2d 655 (1998); Intl. Software &c. v. Atlanta Pressure &c. Co. [sic], 194 Ga. App. 441-442, 390 S.E.2d 659 (1990); [Ga. Code Ann.] § 13-4-60.

> . . . As a general rule, rescission must occur prior to, and as a condition precedent to, the bringing of an action; it is too late to claim rescission by asserting it for the first time in the pleadings. Consulting Constr. Corp. v. Edwards, [427 S.E.2d 789, 791 (Ga. Ct. App. 1993)].

Wender & Roberts, Inc. v. Wender, 518 S.E.2d 154, 159-60 (Ga. Ct. App. 1999).[6]

---

[6] A separate statute governs rescission prompted by the other party's non-performance, see Ga. Code Ann. § 13-4-62, and different standards and principles inform the two, as least as TO the requirement that any benefits be restored. See Int'l Software Solutions, Inc. v. Atlanta Pressure Treated Lumber Co., 390 S.E.2d 659, 661 (Ct. App. Ga. 1990). Georgia cases often seem to borrow language from cases concerning one type of rescission and apply it to cases involving the other, however, so it is sometimes difficult to determine whether the law being stated applies to both types and simply refers to rescission in more general terms, or whether it is being incorrectly applied to a different type. The facts in Wender, for example, involved rescission for fraud, but it cites to Int'l Software Solutions (which was not a fraud case) in the above quotation. Hence, despite Defendants' criticism, the Court does not chastise Plaintiff too harshly for places where its brief seems to refer to language that applies to § 13-4-62 in response to Defendants' arguments concerning § 13-4-60. See, e.g., ECF N. 22 at 15-16, 18 (citing to Radio Perry, Inc. v. Cox Commc'ns, 746 S.E.2d 670 (Ga. Ct. App. 2013), which refers to and discusses

The rules governing rescission, moreover, are not inflexible. For example, a party

> need not tender back what he is entitled to keep, and need not offer to restore where the defrauding party has made restoration impossible, or when to do so would be unreasonable. . . . Because the tender rule is that neither party may retain an unfair advantage, courts are directed to take a flexible and pragmatic approach ... toward the tender requirement. The ultimate goal is to return the parties as nearly as possible to the status quo ante.

Kobatake v. E.I. DuPont DeNemours & Co., 162 F.3d 619, 628-29 (11th Cir. 1998) (citations and internal quotations and alterations omitted). Additionally, no tender of benefits derived is required where "nothing of any value is received by the party seeking to rescind" and "where the amount received under the contract sought to be rescinded may be less than the amount actually due the party seeking to rescind." Metter Banking Co. v. Millen Lumber & Supply Co., 382 S.E.2d 624, 637-38 (Ga. Ct. App. 1989) .

Applying these principles here, the Court has carefully reviewed the allegations in the Amended Complaint and concludes that Plaintiff has alleged sufficient facts to plausibly show it rescinded, or attempted to rescind. In particular, Plaintiff claims that it "obtained confirmation for the very first time" of the alleged misrepresentations in March 2013 when Davis admitted that Defendants had made representations that they knew were false when they made them. Plaintiff also alleges that it then "promptly notified Defendants of their unlawful conduct in an attempt to void and/or rescind the franchise relationship." ECF No. 11, ¶¶ 34-36. It appears that Plaintiff continued operating the restaurant until at least some point in August 2013 (and perhaps still using the Mirko name, although the Complaint is not clear on this point). But Plaintiff has alleged that it did so out of a commitment to third-parties, like its landlord, with whom it had a "long-term lease agreement to continue to operate the business." ECF No. 22 at 18-19. See

---

only § 13-4-62); ECF No. 22 at 16 (containing incomplete quotation to language from Int'l Software Solutions where the original plainly refers to Ga. Code Ann. § 13-4-62).

19

<u>Crews v. Cisco Bros. Ford-Mercury</u>, 411 S.E.2d 518, 520 (Ga. Ct. App. 1991) (recognizing that where a plaintiff "owed a debt to a third party on account of the defendant's alleged fraud" and it "was not within the defrauding party's power to dissolve these obligations" even if the goods were returned, plaintiff could keep the goods). Plaintiff has also alleged that it did not receive anything of value that it could return. ECF No. 11 at 12 n.8.

In short, the Court concludes that discovery is necessary to determine whether Plaintiff in fact rescinded or offered to restore benefits to Defendants obtained under the Agreement, if any, and thus that Plaintiff's claims in Counts II, III, and IV should be permitted to go forward at this time.

### 3.    Count V – Rescission

For the reasons discussed in the preceding section, the Court concludes that Plaintiff has properly pled, as a factual matter, that it plausibly rescinded or attempted to rescind. Thus, it may seek rescission of the contract as a remedy in its complaint, and the court will not dismiss Count V at this time.

### 4.    Count VI – Negligence Per Se

Count VI of the Amended Complaint is titled as a claim for negligence per se. Bans Pasta posits that Mirko violated the FTC Franchise Rule, 16 C.F.R. § 436.1 <u>et seq.</u>, which is a regulation designed to assist in implementing the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 41 <u>et seq.</u> In particular, Plaintiff alleges Defendants violated 16 C.F.R. § 436.5(s)(3)-(5) which, as characterized by Plaintiff, "prohibits the dissemination of [any] financial performance representation absent the franchisor having a reasonable basis for such financial representation and including the financial information in Item 19 of the [Franchise Disclosure Document ("FDD")] or within a supplement to the already existing financial information

contained in Item 19."[7] ECF No. 11, ¶ 81; see also Palermo Gelato, LLC v. Pino Gelato, Inc., 2013 WL 285547, at *2 n.2 (W.D. Pa. Jan. 24, 2013) (describing the Franchise Rule). Because Defendants provided financial performance representations outside the context of Item 19 of the FDD and "falsely represented in Item 19" that it was not making any representations about a franchisee's future financial performance or the past financial performance of company-owned or franchised outlets, Plaintiff alleges that Defendants violated the FTC Franchise Rule.

Defendants argue that Count VI must be dismissed because—as Bans Pasta acknowledges, see ECF No. 22 at 25—neither the FTC Act nor the FTC Franchise Rule gives rise to a private cause of action, and numerous courts have so held. See ECF No. 14 at 5 n.3, 22-23 (collecting authority). Plaintiff counters that it is not bringing a direct claim for a violation of the FTC Franchise Rule, but instead has pled the violation of the Rule as the basis for its negligence per se claim. Defendants contend that to allow this claim to go forward would allow Plaintiff—via use of the negligence per se label (deemed by Defendants a "thinly veiled disguise," ECF No. 14 at 21)—to assert a private cause of action under the FTC Act.

Defendants state that they have been unable to locate any case directly addressing the viability of a negligence per se claim based upon violation of the FTC Act, and the Court's own research has not revealed any such case. Defendants implore the Court not to "open the door to such claims since it would be tantamount to allowing private rights of action that have been universally barred since the inception of the FTC Act." ECF No. 14 at 23 n.16. While the Court understands Defendants' concern and shares it to some extent, both Georgia (and Virginia) law expressly allow negligence per se claims to be premised on statutes and regulations that do not

---

[7] The FTC Franchise Rule contains certain disclosure requirements and prohibitions in the sale of franchises. The twenty-three specified items required to be disclosed by the Franchisor in the Franchise Disclosure Document appear in 16 C.F.R. § 436.5. Item 19, titled "Financial Performance Representations" appears at subsection (s). The text of subsection (s) is several pages long and the Court finds no reason to quote it here.

give rise to a private cause of action. See, e.g., Pulte Home v. Simerly, 746 S.E.2d 173, 179 (Ga. Ct. App. 2013) ("[Ga. Code Ann.] § 51-1-6 authorizes a plaintiff to recover damages for the breach of a legal duty even when that duty arises from a statute that does not provide a private cause of action. [Ga. Code Ann.] § 51-1-6 does not create a legal duty but defines a tort and authorizes damages when a legal duty is breached."); McLain v. Mariner Health Care, Inc., 631 S.E.2d 435, 437 (Ga. Ct. App. 2006) (trial court erred in dismissing claims that could be construed as being created by the Medicare and Medicaid statutes, where the complaint had asserted only a claim of negligence per se); see also Talley v. Danek Med., Inc., 179 F.3d 154, 158-59 (4th Cir. 1999) ("the potential for the negligence per se doctrine to become a mechanism to enforce any statute through a private right of action is cabined in at least two ways[:]" (1) the statute must dictate a standard of care and not "merely impose an administrative requirement," "such as the [mandate] to obtain a license or to file a report to support a regulatory scheme"; and (2) "a plaintiff must still prove the additional elements of duty, proximate causation, and injury to establish liability") (citation and quotation marks omitted).

The Georgia Supreme Court recently reaffirmed that a negligence per se claim may only be based on a statute or regulation that creates a duty, but in doing so, also implicitly approved of allowing such a claim even where no private cause of action exists under the statute or regulation. See Jenkins v. Wachovia Bank, N.A., 744 S.E.2d 686 (Ga. 2013). Specifically, the Jenkins court reversed the intermediate appellate court decision, Jenkins v. Wachovia Bank, N.A., 724 S.E.2d 1, 3-4 (Ga. Ct. App. 2012), which had allowed a negligence per se claim based on a violation of a federal banking statute, even though the statute did not provide a private cause of action. Georgia's Supreme Court reversed solely on the grounds that the federal banking statute did not create a legal duty. It reasoned that the section relied upon expressed a clear "congressional policy statement" but did "not provide for certain duties or the performance of or

refraining from any specific acts" and did not "articulate or imply a standard of conduct or care." 744 S.E.2d at 688. Id. at 688. Tellingly, the Georgia's Supreme Court's decision was **not** based on the lack of a private cause of action, but simply on the grounds that a negligence per se claim must be supported by a violation of a regulation, directive, or standard. Id. Moreover, the Court offered as a comparison to the case before it two cases including the McLain case, supra, which allowed a negligence per se claim to be based on a statute that does not allow a private cause of action.[8] Id. Thus, it implicitly affirmed that the lack of a private right of action in the underlying statute or regulation does not preclude a negligence per se claim based on it.

Consistent with the foregoing authority, to succeed on its negligence per se claim, Bans Pasta must prove that Defendants violated the FTC Franchise Rule, that the Rule dictates a standard of conduct or care, and must also prove that (1) Bans Pasta "falls within the class of persons the statute was intended to protect; (2) the harm complained of was the same harm the statute was intended to guard against; and (3) the violation of the statute proximately caused the plaintiff's injury." McLain, 631 S.E.2d at 437.

The Amended Complaint pleads the three numbered elements listed above, and also pleads a violation of the FTC Franchise Rule. Thus, the only remaining issue is whether the Rule dictates a standard of conduct or care. Based on the reasoning of both Jenkins and Talley, the Court concludes that it does. In particular, in stark contrast to the "aspirational statement" set forth in the statute at issue in Jenkins, see 744 S.E.2d at 688, the FTC's Franchise Rule supplies a clear legal duty requiring specific actions. Thus, the instant case is more akin to McLain, where the regulation required specific acts designed to protect others. See also Talley, 179 F.3d at 160-61 (contrasting a state law prohibiting speeding (which could support a negligence per se claim

---

[8] Furthermore, it is of no moment that the violation here was of a regulation, rather than a statute. See McLain, 631 S.E.2d at 437 & n.10

23

because it provided for specific conduct and was designed to protect) with a state law requiring a driver to be licensed (which indicates only a failure to comply with an administrative requirement and, moreover, likely fails to establish causation).

For the foregoing reasons, and in the absence of any authority prohibiting a negligence per se claim based on the violation of the FTC Franchise Rule, the Court concludes that Plaintiff has adequately pled its claim and the Court will allow the claim to go forward.[9] Defendants' motion to dismiss Count VI is therefore DENIED.

### 5.    Count VII - Claim for Attorneys' Fees and Litigation Costs

The only argument Defendants offer as to why Plaintiff is not entitled to attorneys' fees or litigation costs is that all of its claims are subject to dismissal. Since the Court denies the motion to dismiss as to some of Plaintiff's claims, the Court will not strike the request for attorneys' fees and litigation costs at this time, although it notes that these are possible remedies, not separate causes of action. See, e.g., Sandy Spring Toyota v. Classic Cadillac Atlanta Corp., 604 S.E. 2d 303 (Ga. Ct. App. 2004) ("A claim for expenses of litigation under [Ga. Code Ann.] § 13-6-11 is not an independent cause of action.") (citation omitted).

---

[9] Defendants also argue that there is a lack of causation on this claim because the violation of the Franchise Rule, if it occurred, did not cause Plaintiff's damages; instead, the damages were allegedly caused by the fraudulent misrepresentations. This argument parses the allegations in the Complaint too thin. The regulation relied upon by Plaintiff requires additional language to be included in the FDD in the event that the Franchisor claims that no actual representations were made regarding financial performance. That language must include an admonition to the Franchisee to report such disclosure to the FTC and "appropriate state regulatory agencies." See 16 C.F.R. § 436.5(s)(1)-(2). Plaintiff's Amended Complaint plausibly alleges that, had Defendants fully complied with the disclosure requirements as set forth in Item 19, they would not have entered into the Franchise Agreement. This is sufficient to survive a motion to dismiss.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART** and

**DENIED IN PART**. It is **GRANTED** as to Count I and **DENIED** as to the remaining Counts.

ENTER: This 17th day of February, 2014.

Hon. James C. Turk
Senior United States District Judge