CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 23 2014

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BANS PASTA, LLC, <br> Plaintiff, <br><br> v. <br><br> MIRKO FRANCHISING, LLC, et al., <br> Defendants/Counterclaimant, <br><br> v. <br><br> BANS PASTA, LLC, <br> RANDY A. SOWDEN, and <br> MICHAEL X. BOGGINS, <br> Counterclaim Defendants. | Case No.: 7:13-cv-00360-JCT <br><br> **MEMORANDUM OPINION** <br><br> By: James C. Turk <br> Senior United States District Judge |

Pending before the Court is the Counterclaim Defendants' Motion to Dismiss the Counterclaim. ECF No. 42. Counterclaimant Mirko Franchising, LLC ("Mirko") has filed a response in opposition, ECF No. 44, and the Counterclaim Defendants have filed a reply, ECF No. 46. On May 14, 2014, the Court heard oral argument on the motion and it is now ripe for disposition. The Court has carefully considered the parties' arguments and concludes that the Counterclaim sufficiently alleges facts that state plausible claims for relief. Thus, as explained in more detail below, the motion to dismiss is DENIED.

**I.    BACKGROUND**

As discussed in the previous memorandum opinion issued by the Court, see ECF No. 28, the Amended Complaint in this matter asserts various claims arising out of, or related to, a failed franchisor-franchisee relationship. The Court previously dismissed Plaintiff's claims under the Virginia Retail Franchising Act, Va. Code Ann. § 13.1-557 et seq., but denied Mirko's motion to dismiss Plaintiff's remaining claims. Most of these claims seek rescission of the Franchise Agreement on the grounds that the franchisee (Bans Pasta, LLC ("Bans")) and its members,

Randy A. Sowden and Michael X. Boggins, were negligently or fraudulently induced into entering into the agreement based on various statements by Mirko's principals concerning the financial viability of Mirko franchises.

In its Counterclaim, Mirko brings mostly contract and contract-related claims against Bans, Sowden, and Boggins. Count I asserts a breach of contract claim against Bans seeking damages of not less than $235,760.84. Count II asserts a breach of guaranty claim against Sowden and Boggins. Counts III and IV allege breach of contract claims against Bans and Sowden/Boggins, respectively, based on alleged violations of certain confidentiality provisions, and seek injunctive relief and restitution. Count V asserts a claim against all Counterclaim Defendants for misappropriation of trade secrets under the Georgia Trade Secrets Act ("GTSA"), Ga. Code Ann. § 10-1-760 et seq.

Accepting the well-pled facts in the Counterclaim as true, as this Court must when ruling on a motion to dismiss, see Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008), the facts relevant to the Counterclaim are as follows:

Mirko has developed and implemented a "valuable, unique, and reputable" franchise model, wherein "it grants to qualified persons franchises to own and operate Mirko's restaurants" and "licenses to franchisees the rights to use Mirko's brand and confidential information and trade secrets." ECF No. 36, Counterclaim, ¶¶ 10-11. Mirko "works directly with its franchisees on all aspects of the operation of Mirko's restaurants" and provides to franchisees "a variety of confidential and proprietary information concerning Mirko's brand, including standard specifications, procedures, and methods for setting up and operating" a Mirko restaurant. Mirko also trains franchisees "in all material aspects of the operation of their restaurant." Id., ¶ 12. Mirko claims that, "[b]y permitting franchisees to tap into Mirko's established system, reputation, and good will, and to use and benefit from its proven operating procedures, Mirko

enables franchisees to go into the restaurant business immediately with an accomplished restaurant concept and to operate under established procedures, which significantly lowers barriers to entry into the restaurant business." Id., ¶ 13.

On or about September 10, 2011, Bans entered into a standard franchise agreement with Mirko ("the Franchise Agreement"), and Sowden and Boggins each signed a Guaranty of Franchise Owner's Undertakings (the "Guarantees") where they agreed to "jointly and severally unconditionally guarantee the full, prompt, and complete performance of [Bans] under the terms, covenants and conditions of the [Franchise Agreement]." Id., ¶ 16, 18 and Exs. A, C, and D. Among other terms, the Agreement provided that Bans would operate a Mirko restaurant in Roanoke, Virginia ("the Restaurant") for a term of ten years, and would pay to Mirko a weekly service fee totaling six percent of the Restaurant's weekly gross revenues. Id., ¶¶ 24-26.

Additionally, Sowden and Boggins signed Confidentiality Agreements in which they agreed, among other things, not to disclose trade secrets or confidential information as defined in the Agreement, and not to "utilize any Confidential Information or Trade Secrets other than for the benefit of [Bans]." See generally, ECF No. 36, at Exs. E and F. The Agreements also provided that the confidentiality obligations "survive the expiration or termination of the Franchise Agreement (regardless of the cause of termination) . . . ." Id. at Ex. E, p. 4; id. at Ex. F, p. 4.

The Counterclaim further alleges that the Restaurant opened in October 2012 and that in March 2013, Bans's counsel wrote a letter to Mirko accusing it of certain bad acts that Bans asserted had resulted in the constructive termination of the Franchise Agreement. Despite this, between March 20, 2013 and August 2, 2013, Bans continued to operate the Restaurant as a Mirko franchise, including displaying Mirko's proprietary signage and selling foods and beverages from Mirko's proprietary recipes and specifications. ECF No. 36, ¶ 33. During this

time, Bans also continued to pay the franchise service fee to Mirko. Id. On August 5, 2013, according to the Counterclaim, Bans's counsel sent a letter to Mirko and its counsel titled a "Notice of Rescission," in which Bans notified Mirko it was "ceas[ing] all franchise operations." Bans also closed its Mirko restaurant on or about the same date and, very shortly thereafter, began operating a different Italian restaurant at the same location, called Fresco's." ECF No. 36, ¶ 41 and Ex. J at 2. In response, Mirko's counsel wrote a letter on August 13, 2013 informing Bans that its conduct consisted a breach of the Franchise Agreement and that Mirko was thereby terminating the Franchise Agreement. Id. at Ex. J. Although it is not set forth in the Counterclaim, counsel explained at the hearing that Bans and its members are not currently operating a restaurant at the Restaurant's prior location or elsewhere.

## II. ANALYSIS

### A. Legal Standards Governing Rule 12(b)(6) Motions to Dismiss

To survive a motion to dismiss, the Counterclaim's allegations must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). This standard "requires the [counterclaimant] to articulate facts, when accepted as true, that 'show' that the [counterclaimant] has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

### B. Counterclaim Defendants' Motion to Dismiss

In their motion, Counterclaim Defendants argue that all of the counts of the Counterclaim should be dismissed, offering various reasons in support. Mirko contends that each of the counts sufficiently states a claim upon which relief may be granted. Just as the parties did during the hearing, the Court will address the counts in order.

4

### 1. Counts I and II – Breach of Contract (Damages)

The Counterclaim Defendants first argue Count I should be dismissed because it is not supported by adequate factual allegations and because the exhibits that are attached to the Counterclaim "contradict the general and conclusory allegations" in the Counterclaim. ECF No. 42 at 2. They further contend that Count II fails because it is simply a breach of guaranty claim that is conditioned upon establishing a breach of contract claim in Count I. Id. For the reasons discussed below, the Court rejects these arguments.

Under Georgia law,[1] a breach of contract claim first requires a plaintiff to plead "(1) the subject matter of the contract, (2) consideration, and (3) mutual assent by the parties to all of the contract terms." Importers Serv. Corp. v. GP Chems. Equity, LLC, 652 F. Supp. 2d 1292, 1300 (N.D. Ga. 2009) (citing Broughton v. Johnson, 545 S.E.2d 370, 371 (Ga. Ct. App. 2001) and Ga. Code Ann. § 13-3-1). Bans does not challenge any of these elements of Mirko's contract claims and the Court easily finds they have been adequately pled. Once a contract is shown, a plaintiff may recover for the breach of such a contract by showing a breach and "the resultant damages to the party who has the right to complain about the contract being broken." Importers Serv. Corp., 652 F. Supp. 2d at 1300-01 (citing Budget Rent-A-Car of Atlanta, Inc. v. Webb, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996)).

The Counterclaim here alleges that "Bans breached the Franchise Agreement with the following actions:

(a) by failing to continuously operate the Restaurant as a Mirko franchisee;
(b) by operating another business at the Restaurant;

---

[1] The four contract-based claims in the Counterclaim are governed by Georgia law because the Franchise Agreement contains the following choice-of-law provision: "Except to the extent governed by the U.S. Trademark Act of 1946 . . . this Agreement shall be governed by the laws of the State of Georgia, without giving effect to that state's conflict of law principles." Franchise Agreement, ECF No. 36, Ex. A, Section XXIII(E).

5

(c) by engaging in activity that had a material adverse effect on Mirko;
(d) by using Mirko's proprietary marks in an unauthorized manner;
(e) by using and/or disclosing Mirko's confidential and proprietary information in violation of Section XIII of the Franchise Agreement;
(f) by failing to return manual and other materials; and
(g) by failing to pay monies owed to Mirko under the Franchise Agreement."

ECF No. 36, ¶ 45. The Counterclaim also alleges that Mirko "has and/or will suffer direct and consequential damages, including, but not limited to, lost Future Service fees, reduced to present value, in an amount to be proven at trial, but not less than $235,760.84." Id., ¶ 46.[2]

The Court has reviewed the factual allegations and concludes that Mirko has sufficiently pled both a breach of contract and resulting damages in Count One. Specifically, Mirko alleges that the parties entered into the Franchise Agreement which, by its terms, provides that Bans is in breach of the Franchise agreement if it "fails to continuously and actively operate the Restaurant" for the ten-year term of the Contract. ECF No. 36, ¶ 22 & Exhibit 1 thereto at Section XVI.C. It has further alleged that Bans stopped operating the franchise and then (almost immediately) began operating a different Italian food restaurant at the same location. See ECF No. 36, ¶¶ 33, 41. Mirko also alleges damages from this breach, in the amount of lost future service fees, among others. Subsections (a), (b), (c), and (g) adequately state a claim.[3]

The fact that it was Mirko who officially "terminated" the Franchise Agreement based on Bans's breach, moreover, does not mean that Mirko cannot seek relief for damages for its termination. See Progressive Child Care Systems, Inc. v. Kids 'R' Kids Int'l, Inc., 2008 WL 4831339, at *4-5 (Tx. Ct. App. Nov. 6, 2008) (applying Georgia law and holding that a

---

[2] The basis for this amount is set forth in the August 13, 2013 letter from Mirko's counsel. See ECF No. 36, Ex. J, at 2-3.

[3] Bans contends that subsections (c) through (f) fail as a matter of law, ECF No. 42 at 6; ECF No. 46 at 4 n.2, and analyzes these subsections together. The Court concludes that subsection (c) is more properly grouped with (a), (b), and (g), since (like (a) and (b)), subsection (c) appears to refer to Bans Pasta's operation of another restaurant at the same location.

6

franchisor could seek recovery of past-due and future royalties it would have received but for the franchisee's breach of the agreement, where the franchisor terminated the underlying contract after the franchisee's breach); see also Meineke Car Care Ctrs., Inc. v. RLB Holdings, LLC, 423 F. App'x 274, 282-285 (4th Cir. Apr. 14, 2011) (holding a franchisor was entitled to lost future royalties despite the fact that it terminated the underlying contract after a breach by the franchisee).

Bans's arguments regarding the other subsections of the breach of contract claim are likewise infirm. Specifically, Bans argues that the remaining subsections fail because Paragraph 33 of the Counterclaim acknowledges that, through August 2, 2013, "Mirko continued to actively provide franchisor services to Bans for the restaurant, and Bans continued to pay Mirko weekly franchisee Service Fees due under the Franchise Agreement." ECF No. 36, ¶ 33. Based on this, Bans contends that Mirko's own allegations establish that Bans continued to use its marks with authority and with full payment of fees for the period of March through early August 2013.

As an initial matter, the Court is not certain that either subsection (e) or (f) is inconsistent with the allegations in Paragraph 33, as Bans contends. Subsection (e), alleging that Bans "us[ed] or disclos[ed] Mirko's confidential and proprietary information in violation of Section XIII of the Franchise Agreement," could refer to the use of Mirko's recipes or other confidential information at the new restaurant. Likewise, subsection (f), which accuses Bans of "failing to return [Mirko's operating] manual and other materials" could be a stand-alone breach untethered to the period during which Bans continued to pay franchisor service fees.

Nevertheless, to the extent that subsections (d) through (f) are based on conduct before August 2, 2013, they are not barred by the allegations in Paragraph 33 because they are alternatively-pled claims. That is—as Bans well knows—a crucial issue in this case is whether Bans properly rescinded the Franchise Agreement and, if so, the timing of any rescission, i.e.,

whether Bans rescinded in March 2013 or instead did not do so until after filing this lawsuit. See generally ECF No. 28 at 16-20 (Court's prior Memorandum Opinion discussing rescission under Georgia law). In the context of this case, then, it is clear that the claims set forth in subsections (d) through (f) could be interpreted as alternative claims, as explained in Mirko's briefing—see ECF No. 44 at 7-8 and 9 n.8. That is, if Bans Pasta attempted to rescind the contract in March 2013 (as Bans has contended, see generally ECF Nos. 11, 22), and if it is ultimately determined that rescission occurred in March 2013, then Mirko is alleging that the continued use of Mirko's proprietary marks after that time constituted a breach of contract.[4] For all of these reasons, Count I is not subject to dismissal.

As both parties acknowledge, the Court's ruling on Count I is also dispositive as to Count II. Thus, the Court denies the motion to dismiss Count II of the Counterclaim, as well.

### 2. Counts III and IV – Breach of Contract Requesting Injunctive Relief

The Counterclaim Defendants next posit that Counts III and IV should be dismissed because they seek injunctive relief and Mirko has not and cannot allege that Bans continues to breach the Franchise Agreement. This contention is based primarily on Counterclaim Defendants' assertion that "Bans rescinded the Franchise Agreement and Mirko subsequently terminated the Franchise Agreement effective August 2013." ECF No. 42 at 3, and also appears to rely on the fact that the second restaurant is no longer in operation. In particular, Bans contends that injunctive relief is inappropriate here for two reasons. First, irreparable harm exists

---

[4] Although the Counterclaim does not expressly state that it is pleading in the alternative, this is the clear import given the context of the case, a context with which all parties and their attorneys are familiar. Thus, the Court will not require an amendment to expressly plead in the alternative and will further assume that alternative pleading within a single count is permitted. See 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1282 (3d ed. rev. 2014) ("[U]nder [Fed. R. Civ. P.] 8(e)(2), a party may plead alternatively or hypothetically within a single count or defense . . . ."); cf. id. (contrasting this widely-accepted approach with the contrary approach of the Seventh Circuit, which "require[s] that the technical form of the complaint make it sufficiently clear that the plaintiff intends to plead in the alternative.").

only where money damages will not adequately compensate a party, see Variable Annuity Life Ins. Co. v. Joiner, 454 F. Supp. 2d 1297, 1304 (S.D. Ga. 2006), and Mirko has sought damages for the same breaches of contract, thereby refuting any irreparable harm. Second, Bans argues that because Counterclaim Defendants are not currently operating a restaurant, Mirko cannot establish a threat of future injury, as required. See, e.g., Church v. City of Hunstville, 30 F.3d 1332, 1337 (11th Cir. 1994) ("a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate . . . threat of *future* injury") (citation omitted) (emphasis in original). Bans's arguments, however, ignore Mirko's allegation that the Counterclaim Defendants failed to return an operating manual and other confidential materials, in violation of the Franchise Agreement, and that these obligations survive the termination of the Franchise Agreement. Thus, Mirko has alleged a breach of the agreement, and this breach is a proper basis for seeking injunctive relief.[5]

As to Count IV, the parties agree that the Court's ruling on Count III also dictates the result as to Count IV. Accordingly, the motion to dismiss Count IV is likewise denied.

### 3. Count V – Misappropriation of Trade Secrets

As noted, Count V alleges a claim under the Georgia Trade Secrets Act. A claim for misappropriation of trade secrets under the GTSA requires a plaintiff to prove that "(1) it had a trade secret and (2) the opposing party misappropriated the trade secret." Capital Asset Research Corp. v. Finnegan, 160 F.3d 683, 685 (11th Cir. 1998) (quoting Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp., 139 F.3d 1396, 1410 (11th Cir. 1998)).

---

[5] It is not clear to the Court whether Mirko is also seeking additional injunctive relief. Nonetheless, Count III contains a plausible claim for some injunctive relief, i.e., the return of the manual and other confidential materials, and thus the Court denies the motion to dismiss Count III.

9

Bans argues that this claim fails for at least two reasons: (1) Mirko has failed to allege what precise trade secrets it possesses that were allegedly misappropriated by Bans; and (2) a claim under the GTSA requires the use of improper means to obtain the trade secrets and here, the alleged trade secrets were disclosed to Bans as part of the business relationship between the parties and so "misappropriation" has not been adequately pled. Id. Neither contention has merit.

As to the first, a reading of the Counterclaim makes clear that Mirko has adequately pled and described its trade secrets. See especially ECF No. 36, ¶¶ 64-70; see also Atlantic Fiberglass USA, LLC v. KPI, Co., Ltd., 911 F. Supp. 2d 1247, 1259 (N.D. Ga. 2012) (denying motion to dismiss a misappropriation of trade secrets claim where the claimant alleged that "it developed trade secrets in the form of 'technical data, methodologies, product plans, and other trade secret information' related to its 'special order fiberglass product.'").

In its second contention, Bans argues that Mirko has filed to allege misappropriation because it has not alleged Bans "used improper means" to acquire knowledge of a trade secret. Instead, Mirko voluntarily divulged the information in the course of the franchisor-franchisee relationship. This argument, too, is untenable. The statute expressly defines "improper means" as including "breach . . . of a confidential relationship or other duty to maintain secrecy or limit use." Ga. Code Ann. § 10-1-761(1); see also Camp Creek Hospitality Inns, Inc., 139 F.3d at 1412 ("the GTSA includes the diversion of information acquired under legitimate circumstances within its definitions of misappropriation"). Mirko alleges that: (1) it divulged information constituting trade secrets to Bans; (2) Bans was required by agreement to maintain the confidential nature of that information; and (3) Bans utilized that information to operate a competing restaurant in violation of the agreement. Clearly, Mirko has stated a claim of misappropriation. The motion to dismiss Count V of the Counterclaim is thus denied.

### III. CONCLUSION

For the foregoing reasons, Counterclaim Defendants' Motion to Dismiss the Counterclaim, ECF No. 42, is DENIED.

ENTER: This 23rd day of May, 2014.

/s/ James C. Turk
Hon. James C. Turk
Senior United States District Judge